NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **JACKSON HEWITT INC.,**<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>**LARSON & SAVAGE, INC., ET AL.,**<br><br>　　　　Defendants. | Civ. No. 2:13-00403 (WJM)<br><br>**OPINION** |

<u>**WILLIAM J. MARTINI, U.S.D.J.:**</u>

　　　　Through this action, Plaintiff Jackson Hewitt Inc. ("Jackson Hewitt") alleges that a former franchisee failed to perform certain post-termination obligations arising out of a franchise agreement. This matter comes before the Court on Jackson Hewitt's unopposed motion seeking default judgment against Larson & Savage, Inc. and Raymond Medeiros ("Defendants") for failure to appear or otherwise defend. For the reasons set forth below, the motion is **GRANTED**.

**I.　　BACKGROUND**

　　　　**A.  Plaintiff's Allegations**

　　　　Plaintiff Jackson Hewitt, a Virginia corporation with its principle place of business in New Jersey, provides computerized income tax return preparation services through a network of franchised and company-owned offices. (Complaint at ¶¶ 1, 18) As part of its business, it grants franchises to individuals and entities to operate income tax preparation businesses under the Jackson Hewitt name. (Compl. at ¶ 1) On October 8, 2004 it entered into a franchise agreement ("the Agreement") with Defendant Larson & Savage, Inc. ("L&S"), a California corporation with its principle place of business in California. (Compl. at ¶¶ 2, 11) Defendant Raymond Medeiros is a California resident who personally guaranteed L&S's obligations under the Agreement. (Compl. at ¶¶ 2,12)

According to Jackson Hewitt, L&S violated the Agreement by, among other things, transferring its franchise business without Jackson Hewitt's written consent and failing to maintain the confidentiality of Jackson Hewitt's proprietary information. As a result of L&S's conduct, Jackson Hewitt exercised its right to terminate the Agreement (Compl. at ¶¶ 13, 42-52) Upon the termination of the Agreement, Defendants were contractually required to meet certain post-termination obligations. Of relevance here, Defendants were required to (1) pay Jackson Hewitt all monies due and owing under the Agreement; (2) remove any indicia that their business location is operated as a Jackson Hewitt office, including any Jackson Hewitt marks, trade dress, or signs; (3) return proprietary information, client files, and other property to Jackson Hewitt; and (4) refrain from engaging in a competing tax preparation business for a two-year period. (Compl. at ¶ 14) On January 21, 2013, Jackson Hewitt filed a 12-count Complaint alleging that Defendants violated these post-termination obligations. The Complaint, which asserts causes of action under the Lanham Act and the common law, seeks monetary and injunctive relief. (Compl. at ¶¶ 64-79, 85-162).

### B.  Procedural History

Because an August 8, 2014 Report and Recommendation issued in this matter ("the R&R") accurately lays out a thorough procedural history of this case, the Court will only provide a general overview of that history insofar as it is relevant to the instant motion. ECF No. 45. As the R&R notes, Defendants have on multiple occasions defied Court Orders by refusing to attend in-person status conferences. They have done so despite repeated warnings that failure to comply with Court Orders would result in sanctions. *See, e.g.,* ECF No. 39. After Defendants refused to attend two in-person status conferences, Jackson Hewitt filed an unopposed motion to strike the Answer and Counterclaim of Defendants and enter default for failure to comply with Court Orders. See ECF Nos. 35, 43. On August 8, 2014, U.S. Magistrate Judge Mark Falk issued the R&R, which recommended that Defendants' Answer and Counterclaim be stricken and default entered. ECF No. 45. On September 2, 2014 the R&R was adopted as the opinion of this Court; and two days later, default was entered for failure to plead or otherwise defend. ECF No. 46. Jackson Hewitt now brings an unopposed motion for default judgment. ECF No. 47.

## II.   DISCUSSION

"Before imposing the extreme sanction of default, district courts must make explicit factual findings as to: (1) whether the party subject to default has a meritorious defense, (2) the prejudice suffered by the party seeking default, and (3) the culpability of the party subject to default." *Doug Brady, Inc. v. N.J. Bldg. Laborers Statewide Funds,* 250 F.R.D. 171, 177 (D.N.J. 2008) (*citing Emcasco Ins. Co. v. Sambrick,* 834 F.2d 71, 74 (3d Cir. 1987)). ("[W]e have further required the district court to make explicit findings concerning the factors it must consider in rendering judgment by default or dismissal, or in declining to reopen such judgment"). "In weighing these factors, district courts must remain mindful

that, like dismissal with prejudice, default is a sanction of last resort." *Doug Brady*, 250 F.R.D. at 177.

With respect to the first two factors, the Court has already concluded that Defendants are the culpable party and that Jackson Hewitt has been prejudiced. (R&R at 4-5; ECF No. 46) The Court will therefore confine its inquiry to whether Defendants have a meritorious defense to Jackson Hewitt's requests for monetary relief and a permanent injunction.

### A.  Past Due Fees

In its breach of contract claim, Jackson Hewitt argues that Defendants owe past due fees under the Agreement. "To establish a breach of contract claim, a plaintiff has the burden to show that the parties entered into a valid contract, that the defendant failed to perform his obligations under the contract and that the plaintiff sustained damages as a result." *Murphy v. Implicito*, 920 A.2d 678, 689 (N.J.Super.Ct.App.Div. 2007). Here, Jackson Hewitt has sufficiently alleged that it entered into the Agreement with L&S and that Medeiros personally agreed to guarantee the Agreement. (Compl. at ¶¶ 72-79; Agreement at ¶¶ 5,6,8) Jackson Hewitt has also sufficiently alleged that Defendants failed to pay Jackson Hewitt past due fees owed under the Agreement, thereby violating the Agreement's terms. (Compl. at ¶¶ 50-56) After reviewing the sworn declarations submitted by Jackson Hewitt, the Court will award Jackson Hewitt $181,589.64 in past due fees. (Janofsky Decl., ECF No. 35-11; Dienelt Decl., ECF No. 43-2)

### B.  Attorneys' Fees and Costs

Pursuant to the Agreement, Defendants are also required to pay Jackson Hewitt attorneys' fees if Jackson Hewitt prevails in this action. (Compl. at. ¶¶ 80; Agreement at ¶ 28) After reviewing the sworn declarations submitted by Jackson Hewitt, the Court finds that Jackson Hewitt is entitled to $35,784.52 in attorneys' fees and costs.  (Dienelt Decls., ECF Nos. 35-2; 43-2)

### C.  Permanent Injunction

Jackson Hewitt also requests that this Court enter a permanent injunction requiring Defendants to comply with other post-termination obligations set forth in the Agreement. Specifically, Jackson Hewitt ask the Court to require that Defendants (1) refrain from engaging in the business of filing individual tax returns within the agreed geographic boundaries for a two-year period; (2) return all client files; (3) return all trade secret, confidential, and proprietary information; and (4) transfer telephone numbers of former franchise locations to Jackson Hewitt. (Mt. for Default at 10) Jackson Hewitt also requests that Defendants be required to submit a report setting forth the manner in which they have complied with the permanent junction. (Proposed Default Judgment at ¶ 5)

In order to obtain a permanent injunction, Jackson Hewitt must demonstrate: (1) it has suffered an irreparable injury; (2) remedies available at law are inadequate to compensate for that injury; (3) considering the balance of hardships between the parties, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction.  *eBay Inc., et al. v. MercExchange LLC,* 547 U.S. 388, 391 (2006).  The Court finds that Jackson Hewitt has met this standard.  Jackson Hewitt's business relies on maintaining the integrity of its reputation while expanding its national brand through the use of franchise agreements.  Allowing a former franchisee to continue using Jackson Hewitt's branding, client files, and proprietary information after the franchise agreement has been terminated would pose a significant threat to that business model.  The Court is satisfied that such a threat can be abated only by a permanent injunction and will therefore grant the injunctive relief that Jackson Hewitt seeks.[1]

### III.   CONCLUSION

For the foregoing reasons, Jackson Hewitt's motion for default judgment is **GRANTED.**  An appropriate order follows.

/s/ William J. Martini  
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: October 31, 2014**

---

[1] The Court also finds that granting a permanent injunction would not disserve the public interest.  With respect to the non-compete provision in particular, other Judges in this District presiding over Jackson Hewitt franchise cases have found similar non-compete provisions to be valid and enforceable.  *See Jackson Hewitt, Inc. v. Dupree – Roberts,* No. 13-00388, 2013 WL 4039021 (D.N.J. Aug. 7, 2013); *Jackson Hewitt, Inc. v. DJSG Utah Tax Service, LLC, et al.,* No. 10-5330, 2013 WL 2459877 (D.N.J. June 6, 2013), *aff'd*, 430 Fed.Appx. 162 (3d Cir. 2011).  The Court agrees with the reasoning of those decisions and will require Defendants to comply with the Agreement's non-compete provision.